IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cr-0136-BO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, Government, | ) ) ) ) | |
| v. | ) ) | ORDER |
| MILTON CHRISTOPHER ALLEN, Defendant. | ) ) ) ) ) | |

This matter is before the Court on Defendant Allen's corrected motion to suppress evidence [DE 34], motion for disclosure of Rule 404(b) [DE 31] and *Brady / Giglio* material [DE 32], and motion to sequester witnesses [DE 33]. A hearing was held before the undersigned on October 23, 2024, in Elizabeth City, North Carolina. The deadline for filing responses has passed. For the following reasons, the motions are granted.

## BACKGROUND

On October 16, 2023, Defendant Allen was riding his bike up and down a street in downtown Raleigh where police officers were recovering a stolen car. Allen did not comply with the officers' instructions to leave and continued to obstruct traffic. Allen fought against the officers when they attempted to take him off of his bike, throwing one officer to the ground and biting another. He was able to stand up with both officers trying to hold him down after a failed takedown attempt. Another, unrelated officer saw the scuffle and rushed to assist, ultimately forcing Allen to the ground as other officers responded. During the arrest, Allen continued to struggle while on the ground, shouting for help.

Defendant Allen had two black cross-body bags strapped to his chest that were dislodged during the scuffle. These bags were not searched immediately—rather, they were only searched

approximately fifteen minutes after Allen was secured. Officer bodycam footage presented to the Court shows that the arrest began at 12:02:26 AM, and Allen was handcuffed facedown by at least 12:05:25 AM. The search of the bags began at approximately 12:21:05 AM. Defendant Allen has moved to suppress the discovered evidence as the product of an unlawful search incident to arrest.

ANALYSIS

## I. Motion to Suppress

### A. *Search Incident to Arrest*

Warrantless searches are *per se* unreasonable under the Fourth Amendment, and only permissible within a few well-delineated exceptions. In *Arizona v. Gant*, the Supreme Court held that police can "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 556 U.S. 332, 343 (2009). In *United States v. Davis*, the Fourth Circuit expanded the *Gant* holding to apply in non-vehicular contexts, holding that "police officers can conduct warrantless searches of non-vehicular containers incident to a lawful arrest 'only when the arrestee is unsecured and within reaching distance of the container at the time of the search.'" *United States v. Davis*, 997 F.3d 191, 197 (4th Cir. 2021). *Davis* is dispositive of the issue presented here.

In *Davis*, the Fourth Circuit concluded that a warrantless search was impermissible when the arrestee was handcuffed and laying on his stomach with a bag next to him. *Id.* at 198. The arrestee was surrounded by three officers in a distraction-free environment. *Id.*

The Fourth Circuit also offered disanalogous scenarios in which the criteria of "unsecured" and "within reaching distance of the container at the time of the search" were met. In *Ferebee*, a defendant was "unsecured" even when they were cuffed and near an officer because they could still walk around freely and "ma[k]e a break for the backpack inside the house." *Id.* at

2

199 (citing *United States v. Ferebee*, 957 F.3d 406, 419 (4th Cir. 2020)). Further, the defendant in *Ferebee* had the "dexterity to tamper with evidence while handcuffed." *Id.* In *Shakir*, officers handcuffed the defendant and then searched a duffel bag that the defendant had dropped at his feet. *Id.* at 199 (citing *United States v. Shakir*, 616 F.3d 315, 316 (3rd Cir. 2010)). Even though Shakir was handcuffed and guarded by two officers, the search was still reasonable because he could have dropped to the floor and accessed the bag. *Id.* Contributing factors included being in a public area with a fluid arrest scene. *Id.* at 200.

For the search at issue here to be permissible, Allen must have been "unsecured" and "within reaching distance of the container at the time of the search." The Fourth Circuit has not determined if this is a two-factor test, both of which must be satisfied, or a sliding scale for evaluating the reasonableness of the search. *Davis*, 997 F.3d 191 fn. 6. The Court shall consider both.

The second criterion is easily evaluated—during the search, the bags were mere inches away from Allen's feet. Even in handcuffs, the bags were within reaching distance.

The first criterion—whether Allen was "unsecured"—presents a tougher question. At the time of the search, Allen was sitting up wearing a pair of ankle restraints with his hands cuffed behind his back. He was surrounded by at least six officers and multiple paramedics as he received medical attention. This encounter took place at midnight in downtown Raleigh, on a street lined with police vehicles.

The search in *Davis* was impermissible because the defendant was handcuffed, laying facedown, and surrounded by three officers in a distraction-free residential environment. In the present case, Allen was more restrained than the *Davis* defendant—surrounded by at least six officers, in a secured urban environment, with both handcuffs and ankle restraints. The only factor

3

that makes Allen less restrained than the *Davis* defendant is the fact that he was sitting up and receiving medical attention at the time of the search. This alone is not sufficient to say that Allen was "unsecured." The Government argues that Allen could have slipped free of his handcuffs and lunged for the bags, but such gymnastics are extraordinarily unlikely. While Allen may have shown great strength in fighting with the officers at the time of his initial takedown, by the time the bags were searched twenty minutes later, any threat he may have posed had dissipated. *See United States v. Jones*, 2023 WL 4627284 at *14–15 (D. Md. 2023) (agreeing that *Davis* applies when a defendant is (1) sitting up, and (2) their cross-body bag is separated from their person).

The *Ferebee* and *Shakir* cases, which showcase situations in which a warrantless search was permissible, are inapposite. Unlike in *Ferebee*, Allen could not "walk around freely" or "make a break for" the searched bags. 957 F.3d 406, 419. Unlike in *Shakir*, Allen could not have "dropped to the floor" to access the bags. 616 F.3d 315, 321.

For these reasons, the Court finds that the search of the bags incident to Allen's arrest was impermissible. This conclusion is the same regardless of whether the *Davis* test is construed as a two-factor test or as a sliding scale. If construed as a two-factor test, Allen's restraints are dispositive. If construed as a sliding scale, the Court finds that Allen was so secured that it overcomes the fact that the bags were inches from his feet. Either way, Allen was sufficiently secured and could not have accessed the bags at the time of the search.

### B. Inevitable Discovery

Alternatively, the Government argues that the evidence found in the bags should be admissible because it would have been inevitably discovered as part of a routine inventory search upon Allen's arrival at the Wake County Detention Center. In support of this position, the

4

Case 5:24-cr-00136-BO-RJ     Document 45     Filed 11/01/24     Page 4 of 8

Government has offered a copy of the applicable inventory search policy and testimony from an officer at the Detention Center who oversees such searches.

The inevitable discovery doctrine allows for the admission of evidence "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means..." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "Lawful means" includes routine inventory searches. *Id.* However, for the inventory search exception to apply, the search "must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy[,] and performed in good faith." *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (quoting *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6 (1987). Standardized uniform policies may be established by "reference to either written rules and regulations or testimony regarding standard practices." *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (emphasis in original).

To support their position that the evidence would have inevitably been discovered, the Government provides a one-page printout from a policy manual stating that "any personal property in possession of an arrestee must be searched before entry into the Wake County Detention Center per the Wake County Detention Center's policy." [DE 37-1]. While the Government argues that the Detention Center's policy is to search bags, it has not provided a copy of that policy. Lacking the applicable guidelines, the Court cannot say that the bags would have inevitably been searched.

The Government also offered witness testimony about the typical search practices at the Wake County Detention Center, including the different rooms that the defendant enters during the search, how many and which officers are present, and how the search is documented. While testimony is acceptable to show an inventory search policy, there must still be a showing of "standardized criteria [that] sufficiently limit a searching officer's discretion to prevent his search

5

Case 5:24-cr-00136-BO-RJ     Document 45     Filed 11/01/24     Page 5 of 8

from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'" *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). The Court is not persuaded that the offered testimony, which largely focused on the thoroughness of the search, contained enough particularity to show the inevitability of discovery. Further, the Government did not explain why officers could not have seized and held the bags while waiting for a warrant to issue, complying with the strictures of the Fourth Amendment. As observed by the Fourth Circuit in *Davis*, "exceptions to the warrant requirement are not 'police entitlement[s]' to searches," but must be justified by specific circumstances. 997 F.3d 191, 202 (quoting *Thornton v. United States*, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring)).

The Government is required to show, by a preponderance of the evidence, that the evidence at issue would have inevitably been discovered. It falls short of that burden here. The search was unreasonable per the Fourth Amendment and the motion to suppress is granted.

## II.     Motion for Disclosure of Rule 404(b) Evidence

Allen seeks an order requiring the government to "disclose the substance of any evidence it intends to introduce against Defendant pursuant to Rule 404(b) of the Federal Rules of Evidence…" [DE 31].

Rule 404(b) requires that the government provide "reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). Therefore, defendant's motion is granted. The government is ordered to notify defendant of the general nature of any Rule 404(b) evidence it intends to offer not later than ten days before the date trial is scheduled to begin.

6

Case 5:24-cr-00136-BO-RJ     Document 45     Filed 11/01/24     Page 6 of 8

### III. Motion for Disclosure of *Brady / Giglio* Evidence

Allen also seeks information that he claims he is entitled to under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny [DE 32]. Under *Brady*, the government has an affirmative obligation to produce evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (citing *Brady*, 373 U.S. at 87). The government must also disclose evidence that could potentially be used to impeach or discredit a government witness. *Giglio*, 405 U.S. at 154. This evidence must be produced "in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).

Therefore, Allen's motion seeking early disclosure of *Brady* and *Giglio* materials is granted in part. The government shall produce *Brady* and *Giglio* materials on a prompt, ongoing basis. However, this Court determines that the evidence does not need to be produced sixty days before trial is scheduled to begin for it to be "in time for its effective use at trial." The Government shall disclose all materials required to be disclosed no later than seven days before the beginning of trial.

### IV. Motion to Sequester Witnesses

Defendant Allen has moved for an order sequestering the witnesses the Government intends to call during trial and prohibiting the Government's witnesses from discussing the case.

Federal Rule of Evidence 615(a) provides that "at a party's request, the court must order witnesses excluded from the courtroom so they cannot hear other witnesses' testimony." Such an action by the court is mandatory upon request of the parties. *United States v. Farnham*, 791 F.2d 331, 334–35 (4th Cir. 1986). Further, sequestration requires that "witnesses not discuss the case

among themselves or anyone else, other than the counsel for the parties." *United States v. Rhynes*, 218 F.3d 310, 317 (4th Cir. 2000) (en banc).

In accordance with Rule 615(a), the motion to sequester witnesses is granted. The witnesses from the Government are prohibited from appearing in the courtroom during the testimony of other witnesses, and are prohibited from discussing the case with anyone other than counsel for the parties. In accordance with Federal Rule of Evidence 615(a)(2), the Government may designate an officer or employee as the party representative who is exempt from this order. *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir. 1983).

## CONCLUSION

For the foregoing reasons, the motion to suppress the evidence seized in connection with the search of Allen's bags [DE 34] is GRANTED. The motion to disclose Rule 404(b) evidence [DE 31] is GRANTED. The motion to disclose *Brady / Giglio* evidence [DE 32] is GRANTED IN PART and DENIED IN PART. The motion to sequester witnesses [DE 33] is GRANTED.

The first motion to suppress evidence [DE 30] is DENIED AS MOOT.

SO ORDERED, this 31 day of October 2024.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE